IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID JUNIOR WASHINGTON,       )
                               )
          Plaintiff,           )
                               )
v.                             )   Civil Action No. 3:20cv88–HEH
                               )
MICHAEL BROOKS, M.D., *et al.*,)
                               )
          Defendants.          )

**MEMORANDUM OPINION**
(Granting Partial Motions to Dismiss)

This matter is before the Court on Armor Correctional Health Services, Inc. ("Armor"), Michael Brooks, M.D., ("Brooks") and Jessica Sadler's ("Sadler" and collectively, "Defendants") Partial Motions to Dismiss for Failure to State a Claim (the "Motions") filed on August 27, 2021, and September 8, 2021. (ECF Nos. 87, 91.)[1] On August 13, 2020, David Junior Washington ("Plaintiff") filed his Second Amended Complaint ("SAC") bringing eleven different claims against Defendants. (ECF No. 83.) Defendants challenge the sufficiency of Counts IV, V, and VIII. However, Plaintiff conceded Defendants' challenges to Counts IV and V, and in an Order dated October 12, 2021, the Court dismissed these counts with prejudice. (ECF No. 106.) Count VIII alleges Defendants acted negligently in failing to adequately treat and respond to

---

[1] While Defendants Brooks and Sadler filed a separate Motion to Dismiss from Defendant Armor, the arguments in both Motions are substantively identical. Plaintiff's responses and Defendants' supplemental briefs likewise cover the same substance. Therefore, the Court interchangeably references the parties' briefs.

Plaintiff's various medical emergencies. (SAC ¶¶ 316–20.) The parties have submitted memoranda in support of their respective positions. On October 12, 2021, the Court heard oral argument on the issues, and the Motions are now ripe for review. For the reasons stated herein, the Court will grant the Motions and dismiss Count VIII with prejudice.

## I. BACKGROUND

As required by Federal Rule of Civil Procedure 12(b)(6), in reviewing a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Viewed in this light, the relevant facts are as follows.

Plaintiff was incarcerated at Sussex II located in Waverly, Virginia, for the duration of the events contained in the SAC. (SAC ¶ 2.) He suffers from several serious medical conditions including severe uncontrolled diabetes, diabetic neuropathy, heart disease, and sleep apnea. (*Id.* ¶ 3.) Defendant Armor is a private entity contracted to provide medical services to inmates at Sussex II. (*Id.* ¶ 4.) Brooks, the primary care physician at Sussex II, and Sadler, the Facility Health Service Administrator, are both employees of Armor. (*Id.* ¶¶ 5–6.) Plaintiff alleges numerous deficiencies with the medical care Defendants provided him, which can be divided into three main groups of medical issues: (1) a toe infection and subsequent amputation, (2) hypoglycemic and hyperglycemic events, and (3) several other miscellaneous complaints.

In January and February 2019, Plaintiff suffered a toe infection. (*Id.* ¶ 26.) He requested antibiotics or warm soaks but did not receive them. (*Id.* ¶¶ 29–33.) After several visits to the infirmary as the infection worsened, he finally received antibiotics. (*Id.* ¶ 60.) However, the next day, due to the progression of the infection, Defendants sent Plaintiff to a hospital emergency room. (*Id.* ¶ 67.) The doctors at the hospital informed Plaintiff that his toe required amputation to prevent the spread of the infection. (*Id.* ¶ 69.) According to Plaintiff, the hospital staff informed him that the amputation could have been prevented if he received antibiotics or was brought to the hospital earlier. (*Id.* ¶¶ 70, 72.)

Plaintiff also takes issue with his diabetes treatment which led to several hypoglycemic and hyperglycemic events between March 2018 and October 2020.[4] (*Id.* ¶ 108.) By Plaintiff's own records, he underwent seven to eight hypoglycemic events each month, many of which went undocumented by the prison. (*Id.* ¶ 132.) During some of these hypoglycemic events, Plaintiff became unresponsive or incoherent, passed out, collapsed to the floor and broke his teeth, or had a seizure. (*E.g., id.* ¶¶ 84, 86–87, 89, 91.) Plaintiff alleges that these events were caused by Defendants' failure to properly treat his diabetes. Specifically, Plaintiff alleges that Defendants failed to provide food with his insulin, prohibited him from keeping snacks and glucose gel in his cell to prevent drops in blood sugar, refused to administer glycogen injections, and delayed medical treatment. (*E.g., id.* ¶¶ 113–14, 129, 141.)

---

[4] A hypoglycemic event occurs when the body's blood sugar level drops below safe levels. A hyperglycemic event occurs when blood sugar levels are too high.

3

In addition to the allegations above, Plaintiff maintains that Defendants failed to adequately treat him in several other miscellaneous ways. Defendants failed to provide Plaintiff with a pair of diabetic shoes necessary to protect his feet from injury until March 2020, over fifteen months after Plaintiff first requested the shoes. (*Id.* ¶¶ 198–99.) Defendant also did not provide Plaintiff with physical therapy for over ten months after the removal of his toe, which reduced his mobility. (*Id.* ¶ 202.)

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and

the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

In Count VIII of the SAC, Plaintiff alleges that Defendants "breached their duties to exercise reasonable care" and that "[a]s a direct and proximate result of [their] negligence . . ., [Plaintiff] suffered injuries, great physical pain, severe emotional distress, and mental anguish." (SAC ¶¶ 318, 320.) Defendants respond that, because all of Plaintiff's allegations arise out of the treatment of his diabetes, "Plaintiff's claim for general negligence is not actionable as it is merely a recast claim for medical malpractice." (Defs.' Mem. Supp. at 9, ECF No. 88.) Plaintiff argues that he may assert a separate claim for negligence alongside a medical malpractice claim if the negligence claim arises out of "administrative, ministerial, or routine care" duties rather than the provision of medical services. (Pl.'s Opp'n at 5, ECF No. 94.)

The Virginia Medical Malpractice Act (the "VMMA") defines medical malpractice as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Va. Code Ann. § 8.01-581.1. The VMMA places requirements and restrictions on medical malpractice claims that make them harder to maintain and less lucrative for plaintiffs than traditional negligence actions. Importantly, claims within the scope of medical malpractice may *only* be brought pursuant to the requirements of the VMMA and not brought as general

5

negligence claims. *See Zupko v. United States*, No. 3:18-cv-493, 2020 WL 6064955, at *13 (E.D. Va. Oct. 14, 2020).

Virginia courts interpret the VMMA's definition of medical malpractice more broadly than Plaintiff asserts. The Virginia Supreme Court has recognized that "administrative, personnel, and security decisions related to the operation" of a medical facility and unrelated to "the care of any particular patient" do not fall within the definition of medical malpractice. *Alcoy v. Valley Nursing Homes, Inc.*, 630 S.E.2d 301, 304 (Va. 2006) (holding that a nursing home's negligent failure to ensure patients' safety from sexual assault fell outside of medical malpractice).[5] Medical malpractice may include tortious, even criminal, acts by a health care provider if the acts are based on, arise from, or stem from the provision of medical care to a patient. *See Hagan v. Antonio*, 397 S.E.2d 810, 812 (Va. 1990). When interpreting the VMMA, a court must "ask whether the 'malpractice' complained of breached a standard of care to an *individual patient, relating to that individual's care*, or to the facility as a whole." *Peck v. Riverside Hosp., Inc.*, No. CL 1400873V-04, 2015 WL 12591828, at *2 (Va. Cir. Ct. Oct. 5, 2015) (emphasis added). Consequently, Virginia courts have routinely held that an individual patient's delay of medical care claims sound in medical malpractice rather

---

[5] Virginia does not recognize the "administrative, ministerial, or routine care" exception to medical malpractice that Plaintiff gleans from cases interpreting other state statutes. (Pl.'s Opp'n at 4–5.) Plaintiff relies primarily on two cases within the Fourth Circuit, *Iodice v. United States*, 289 F.3d 270 (4th Cir. 2002), and *Williams v. Quest Diagnostics, Inc.*, 353 F. Supp. 3d 432 (D.S.C. 2018). These cases interpret the definition of medical malpractice in North Carolina and South Carolina—not Virginia.

6

than ordinary negligence. *Zupko*, 2020 WL 6064955, at *14 (citing *Rundle v. Carter*, No. CL 14–9423, 2015 WL 12591842, at *3 (Va. Cir. Ct. 2015)).

Plaintiff's assertions of negligence fall within the scope of medical malpractice as defined by the VMMA. The vast majority of Plaintiff's claims rest on Defendants' alleged delay in administering medical care.[6] For instance, Plaintiff alleges that his toe would not have been amputated but for Defendants' delay in prescribing antibiotics and sending him to the hospital. (*See* SAC ¶¶ 70, 72.) He claims that Defendants' failure to administer immediate medical attention following his hypoglycemic attacks exacerbated his conditions. (*Id.* ¶¶ 111–14.) Further, he states that "Defendants' delay in providing [Plaintiff] with diabetic shoes and physical therapy restricted him to a wheelchair for approximately seventeen months." (*Id.* ¶ 204.) Each of these involves a delay in administering medical treatment to an individual patient and therefore falls within the scope of medical malpractice.

Plaintiff's claim that Defendants failed to provide him with adequate nutrition likewise falls within the scope of medical malpractice. Plaintiff does not allege that Defendants failed to provide all prisoners with adequate nutrition generally. Rather, he alleges Defendants failed to provide him "with the necessary supplemental nutrition to

---

[6] Plaintiff attempts to articulate a theory of negligence that sounds more in ordinary negligence by alleging various violations of administrative duties of care as defined by the Virginia Department of Corrections ("VDOC") Operating Procedures. (Pl.'s Opp'n at 7–9.) However, this Court may only consider the allegations contained in the complaint itself when deciding a motion to dismiss. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) ("[A] district court cannot consider matters outside the pleadings without converting [a motion to dismiss] into one for summary judgment."). Plaintiff did not mention any of the VDOC Operating Procedures in the SAC. Therefore, this Court may not consider those procedures in determining whether Plaintiff states a claim of negligence separate from that of medical malpractice.

effectively treat his diabetes." (*Id.* ¶ 192.) Plaintiff claims Defendants prohibited him from keeping snacks in his cell, refused to provide him with glucose gel, and failed to provide him with food after administrations of insulin. (*Id.* ¶¶ 114, 141, 184.) These claims all allege a breach of the standard of care with respect to Plaintiff's individual medical treatment and therefore fall within the scope of medical malpractice.[7]

Plaintiff further argues that Defendants' failure to provide Plaintiff with *access* to medical care, as opposed to the deficient care itself, sounds in negligence.[8] This argument does not hold water. While Plaintiff asserts that Sussex II had "no procedure in place" to respond to his medical emergencies, these allegations are only brought against Sussex II prison officials who are no longer parties to this case. (*See* SAC ¶¶ 16, 115.) Likewise, Plaintiff's claim that the prison's policy of confining him "behind double-padlocked doors" only mentions Sussex II "correctional officers," not Armor and its

---

[7] Plaintiff further argues that the fact that a medical license is not required to provide the care sought renders his claims outside the scope of medical malpractice. Plaintiff cites *Brondas v. Corizon Health, Inc.*, No. 7:14-cv-00369, 2015 WL 3491130 (W.D. Va. 2015), in support of this proposition; however, nothing in *Brondas* indicates that medical malpractice only includes care provided pursuant to a valid medical license. *See id.* at *8.

[8] Plaintiff relies on *Jefferson Hospital, Inc v. Van Lear* in making this argument. 41 S.E.2d 441 (Va. 1947). But because *Jefferson Hospital* was decided thirty years before the VMMA, the Virginia Supreme Court did not have the occasion to determine whether the hospital staff's actions fell within the scope of medical malpractice. Therefore, the decision is close to irrelevant to the Court's analysis. The Virginia Supreme Court, however, did hold that whether hospital staff acted negligently in failing to respond to a patient's repeated calls for help was within the common knowledge of the jury. *Id.* at 443. Notably, the VMMA includes a similar limited exception to the expert certification requirement for those negligent acts that fall within the jury's common knowledge. Va. Code. Ann. § 8.01-20.1. However, these claims still sound in medical malpractice even though they do not require expert certification because expert testimony would not be helpful to the jury. *See Coston v. Bio-Med. Applications of Va., Inc.*, 654 S.E.2d 560, 563 (Va. 2008). So even if Plaintiff's claims do fall within the exception to the expert certification requirement, that fact is irrelevant to the question presented here.

employees. (*See id.* at ¶ 100.) Plaintiff's remaining allegations purportedly demonstrating negligent denial of access to medical care all relate to Defendants' failure to timely treat Plaintiff's medical needs, an alleged breach of the duty of care to a specific patient that sounds in medical malpractice. (*See id.* at ¶¶ 34, 184, 240–41.) Plaintiff makes one allegation that Armor has no procedures in place to respond to medical emergencies. (*Id.* at ¶ 231.) However, this single allegation does not "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Accordingly, Plaintiff fails to allege that Defendants acted negligently outside the scope of medical malpractice as defined by the VMMA, and the Court will dismiss Count VIII of the SAC for failure to state a claim.

## IV. CONCLUSION

The Court finds that Plaintiff's SAC fails to state a claim for relief on Count VIII because the SAC does not sufficiently state a claim for negligence distinct from that of medical malpractice under Virginia law. Accordingly, the Court will grant Defendants' Partial Motions to Dismiss as to Count VIII. (ECF Nos. 87, 91.)

An appropriate Order will accompany this Memorandum Opinion.

                                              /s/
                                  Henry E. Hudson
                                  Senior United States District Judge

Date: **Oct. 26, 2021**
Richmond, Virginia